(Reap. Dec. 10755)

JOSEF HELLER v. UNITED STATES

Entry No. 730224.

(Decided May 12, 1964)

*Siegel, Mandell & Davidson* (*Murray Sklaroff* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

DONLON, Judge: The merchandise of this appeal for reappraisement consists of a considerable aggregation of what is described as secondhand bric-a-brac. It was imported from West Germany on July 18, 1960. Such bric-a-brac is not an article enumerated by the Secretary of the Treasury in his final list (T.D. 54521). Hence, the merchandise is to be appraised under section 402, Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Plaintiff, Mr. Josef Heller, testified in his own behalf. He was plaintiff's sole witness. He described the imported merchandise as secondhand articles, including furniture, glassware, porcelain, and

bone, which he personally selected and bought at stores in West Germany, picked up in his station wagon, and then had packed and shipped to him.

Defendant called, as its witness, the line examiner for secondhand bric-a-brac in the office of the New York appraiser since 1947, Mr. Samuel Leavitt. There are some 48 pages of items listed in a shipping list attached to the official papers. There are no invoices showing sales of any of this merchandise to plaintiff. On the shipping list there are item groupings under headings of "kiste" 1 to 45, inclusive. It would appear that they were packed in Berlin and that they are the articles shown on pages 1 to 18, inclusive, of the shipping list. There are no "kiste" groupings of the articles that are enumerated on pages 19 to 48, inclusive, of the shipping list, evidently similarly packed in Berlin.

I understand that the German word "kiste" merely signifies crate, or case, a term of reference to the particular container in which different articles were packed for shipment.

There is no controversy as to the appraisement of the articles enumerated on shipping list pages 47 and 48. Those appear not to be secondhand bric-a-brac, for they are shown to be purchases "ex factory." Although the location of the factory is not shown (unless "Hann." means Hannover), this is immaterial, as the appraisement of those articles is not in controversy.

What is in dispute is the appraiser's addition of 50 percent to what is called invoice unit values. This is a euphemism. There are no invoices, and there is no proof of particular invoice unit prices.

The official papers are not in evidence, but I note they contain no commercial invoices. There is a "special customs invoice," Form 5515, on which there are lumped together articles in seven different groupings, each shown with an aggregate group value. The purchase declaration is signed illegibly, and the proofs of record do not identify who the signer is. In view of plaintiff's testimony, it may not be assumed that the signer had any firsthand knowledge of the prices plaintiff paid to many different sellers of this merchandise.

Packing cost is not disputed.

Using the entered group values as a base, the appraiser examined the merchandise at plaintiff's premises (at plaintiff's request) by individual inspection of selected articles in various groups, comparing the pieces with their values where such values were shown on the shipping list. (As to many of the articles, plaintiff had not supplied even that value identification.) After this inspection he made the appraisement.

Instead of finding individual values of the approximately 4,000 articles included in the importation, or of the 7 groups thereof in

which plaintiff had entered the merchandise, the examiner added the round figure of 50 percent to bring entered value up to the value which he found to be correct.

Plaintiff asserts that this method of valuation is not within the statutory authority of the appraiser, who is required to appraise merchandise "by *ascertaining or estimating* the value thereof *by all reasonable ways and means* in his power, any statement of cost \* \* \* in any invoice, affidavit, declaration, or other document to the contrary notwithstanding \* \* \*." (Sec. 500, Tariff Act of 1930, as amended, emphasis added.)

It is noted that Congress authorized the appraiser either to ascertain or to estimate value, and that the appraiser is permitted to use ways and means reasonable in the circumstances of a particular problem as it is presented to him. The question is, has plaintiff established that the appraiser here did not estimate the value of this numerous importation of secondhand bric-a-brac by ways and means that were reasonable in the circumstances.

I am of opinion that plaintiff has not shown that the appraiser's procedure was unreasonable.

The ways and means by which an appraiser arrives at the value of merchandise were discussed in *Muser* v. *Magone*, 155 U.S. 240, where the court said:

\* \* \* Among such ways and means are market price or the quotations for a given day; amounts realized on sales, public and private; and in some instances the cost of production. The course of business at St. Gall in respect to these embroideries was peculiar, and to reach a result, in estimating the value, required the consideration of many elements making up the amount which actually represented the pecuniary basis of transactions. How these various elements impressed the general appraiser, and what grounds influenced or controlled his mental processes, were matters in respect of which he could not be interrogated, \* \* \*. [Pp. 251, 252.]

In the absence of fraud, an appraisement will not be set aside because the appraiser has not followed, or has disregarded, certain evidence. He has the right and duty to use his judgment and knowledge in relation to the evidence that is before him. *General Commercial Co.* v. *United States*, 11 Ct. Cust. Appls. 473, T.D. 39538.

Counsel has not cited, nor has the court discovered, any cases in which an appraisement was held erroneous because the value of a large number of items was increased by using an average percentage. There are cases in which discounts were disallowed by appraisers, the amounts being related to value or to quantity, and results have been reached in the cases which differ according to the special facts of the several cases. *J. J. Gavin & Co., Inc. (Salomon & Phillips)* v. *United States*, 38 CCPA 69, C.A.D. 441, and *Indussa Corp.* v. *United States*, 47 CCPA 93, C.A.D. 736.

The *Gavin* case concerned appraisement of saddle soap on the basis of foreign value. A discount of 17½ percent was disallowed by the appraiser. It appeared that it was the practice of manufacturers and dealers to grant discounts that were based on the total money value of purchasers of a variety of different articles and that all purchasers received discounts based on total invoice amount, regardless of what the merchandise was, in varying sums, up to a maximum discount of 17½ percent on an invoice total of £10, or over. The court sustained the appraiser's disallowance of this discount, on the ground that the appraised value of imported articles is to be based upon the unit of quantity and not upon total money value, and that the value of saddle soap cannot be combined, for discount purposes, with the values of other different items.

In the *Indussa* case, frying pans, sauce pans, and casseroles were appraised on the basis of foreign value at *per se* unit prices, less a 27 percent discount. Plaintiff claimed that a discount of 40 percent should have been allowed. The manufacturer sold different items of cast-iron cooking ware, subject to discounts based on the total weight of the goods purchased. The court distinguished the *Gavin* case, on the ground that there the articles were unrelated merchandise, and held it proper to value imported cooking ware by combining different articles on the basis of a unit price, less a discount predicated upon the specified weight of lots containing related articles.

While there are a great many different articles of bric-a-brac in the entry now before me, the uncontradicted testimony is that they all belong to a well-known line of merchandise, which is called secondhand bric-a-brac, and that this is a line with which the examiner is familiar. In effect this corroborates the testimony of plaintiff, who has been dealing with such articles for many years and who knew of many who, also, were in that same line of business. The articles thus have relationship one to the other, so far as the trade line is concerned.

The examiner testified that he went from group to group of the articles, as they were displayed for his inspection and that he examined selected pieces of the merchandise. His appraisement was based upon personal knowledge he had as a specialist in the line of merchandise.

It appears from plaintiff's testimony that this merchandise was sold in West Germany at undisclosed market prices to some and to others at those prices, less an unnamed discount; that hundreds of people bought the merchandise; that he received a discount because he is a wholesaler. He did not know what prices others paid, and he did not testify as to what prices he paid.

Indeed, far from showing what the individual invoice unit prices are for which he makes claim, plaintiff has shown, in the special cus-

toms invoice that he filed, seven groups of merchandise, as follows, in which are aggregated all these imported bric-a-brac articles:

> chinaware
> earthenware
> glassware
> metalware
> furniture, woodwork, mirrors
> music boxes
> ivory carvings

I assume that plaintiff does not assert that his customs invoice was an unreasonable method of complying with entry requirements. Similarly, having taken the initiative in grouping merchandise for entry, he may not now be heard to assert the unreasonableness of the thorough and painstaking work of the examiner in appraising merchandise so entered.

Plaintiff has not established proofs showing that the appraised values are wrong. Therefore, it is not necessary to weigh his inadequate proofs with respect to the values which he claims.

It remains to consider defendant's motion to dismiss the appeal, not on jurisdictional grounds, but for failure to prove plaintiff's claim. This motion is denied. It seems to be predicated on a misunderstanding of the judicial responsibility in reappraisement appeals, which is to find value.

I find as facts:

1. That the merchandise consists of a considerable aggregation of what is described as secondhand bric-a-brac, including furniture, glassware, porcelain, and bone, exported from West Germany on July 18, 1960.

2. That the merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That the items appearing on pages 47 and 48 of the shipping list were appraised at unit values, and that the appraisement of those articles is not in controversy.

4. That the items appearing on pages 1 through 46 of the shipping list were appraised at unit values, net, plus 50 percent, plus cost of packing.

5. That the many different articles involved belong to a well-known line of merchandise, called secondhand bric-a-brac. That the articles were displayed in groups for the examiner's inspection and that he examined selected pieces. That on the special customs invoice, filed by plaintiff, the articles were grouped in seven different categories: Chinaware; earthenware; glassware; metalware; furniture, woodwork, and mirrors; music boxes; and ivory carvings.

6. That these articles were offered for sale in stores at undisclosed prices, which were marked on them. That they were sold to some

buyers at those prices, and to other buyers at those prices, less an undisclosed discount. That plaintiff received an undisclosed discount because he was a wholesaler.

I conclude as matter of law:

1. That the export value, as said value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determination of value of this merchandise.

2. That the appraiser's method of procedure in appraising the merchandise was reasonable.

3. That plaintiff has not established that the appraised values are incorrect.

4. That the appraised values of the merchandise are the export value.

Judgment will be entered accordingly.